UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LORENZO MORALES-ARAMBULA,<br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Respondent. | No. 3:22-cv-323 (SRU) |

**RULING ON PETITION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Lorenzo Morales-Arambula ("Morales" or "the Petitioner"), a prisoner currently incarcerated at Federal Correctional Institution, Williamsburg and proceeding *pro se*, has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Construing the petition liberally, Morales appears to argue that his criminal history category was erroneously calculated and that he was erroneously classified as a career offender under U.S.S.G. § 4B1.1. For the following reasons, Morales's motion is **denied**.

**I.    Background**[1]

   A. Conviction and Sentencing[2]

From October 2017 to April 2018, Morales agreed to and attempted to help a large drug conspiracy obtain narcotics, arranging for the delivery of multi-kilogram quantities of cocaine and heroin from sources in Mexico and northern California.[3] For his role in the drug ring, Morales was charged with conspiracy to distribute and to possess with intent to distribute at least

---

[1] I refer to documents in Morales's criminal case, *United States v. Morales*, Dkt. No. 3:18-cr-81 (SRU), with the shorthand "Cr. Doc.," and to documents in this case without a shorthand for the case name.
[2] The facts regarding Morales's criminal conduct are taken from the transcript of the Court's sentencing hearing and supplemented by the Revised Presentence Report ("PSR"). *See* Rev'd Presentence Report, Cr. Doc. No. 1158; Sent. Tr., Doc. No. 1275, at 6 (adopting the factual findings in the PSR).
[3] Morales did not execute the supply transaction, because he was arrested and detained before the intended transaction occurred. Sent. Tr., Doc. No. 1275, at 19.

one kilogram of heroin and at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(i) and (ii).  Superseding Indictment, Cr. Doc. No. 179.  Morales pled guilty to the charge on January 28, 2020.  Plea Agreement, Cr. Doc. No. 906.

Through his plea agreement, Morales stipulated that the equivalent of at least five kilograms of cocaine and at least one kilogram of heroin were properly attributable to him for his conduct in the conspiracy, as described in the Superseding Indictment, and that the drug quantity was reasonably foreseeable to him and within the scope of his conspiratorial agreement.  *Id.* at 4.  Based on a total offense level of 34 and anticipated Criminal History Category of VI, Morales stipulated to a Guidelines range of 262 to 327 months' imprisonment.  *Id.*  Morales further agreed that he qualified as a career offender under U.S.S.G. § 4B.1.1, *id.*, and that he would "have no right to withdraw his guilty plea if his sentence or the Guidelines application is other than he anticipated, including if the sentence [was] outside any of the ranges set forth" therein, *id*.  Moreover, through his plea agreement, Morales "knowingly, intelligently, and voluntarily" agreed to waive his right to "appeal or collaterally attack the sentence" if it "d[id] not exceed 262 months of imprisonment."  *Id*. at 5-6.

The Court held a plea hearing on January 28, 2020, at which Morales agreed through the plea colloquy that his participation in the conspiracy encompassed an agreement regarding five kilograms or more of cocaine and one kilogram or more of heroin; that he was waiving his right to appeal or collaterally attack his sentence and conviction so long as he received, *inter alia*, a sentence of 262 months of imprisonment or less; and that he was knowingly and willingly accepting the government's plea offer.  Plea Tr., Cr. Doc. No. 1318, at 29-36.  Morales then signed the plea agreement.  *Id.* at 35-36.

The United States Probation Office thereafter completed a Presentence Report ("PSR"), which recommended the same career-offender determination that the parties had stipulated to in the plea agreement. PSR, Cr. Doc. No. 1107. The PSR advised that Morales should be classified as a career offender because he had at least two previous convictions for a violent felony or serious drug offense, citing to convictions for conspiracy to possess with intent to distribute cocaine in 2000; conspiracy to possess with intent to distribute 100 kilograms of marijuana, possession with intent to distribute methamphetamine, in 2001; and opening and maintaining a place for the distribution of a controlled substance in 2001. Identifying Morales's prior convictions, the PSR listed, *inter alia*, that Morales had been convicted of possession of a machine gun and conspiracy to possess marijuana in 1994; conspiracy to possess with intent to distribute cocaine, and possession with intent to distribute cocaine in 2000; and conspiracy to possess with intent to distribute marijuana in 2001. Based on its proposed assessment of Morales's career offender status and calculation of his criminal history points, the PSR accordingly recommended a range of 262 to 327 months' incarceration, subject to the ten-year mandatory minimum term of incarceration required by Morales's offense of conviction.[4] The final PSR enumerated no objections from either Morales or the government. Add. to the Final PSR, Doc. No. 1107-1.

---

[4] As stated, the PSR recommended classifying Morales as a career offender based on convictions for conspiracy to possess with intent to distribute cocaine in 2000; conspiracy to possess with intent to distribute 100 kilograms of marijuana, and possession with intent to distribute methamphetamine, in 2001; and opening and maintaining a place for the distribution of a controlled substance in 2001. Some of the information underlying that recommendation appears to be in error; no convictions for possession with intent to distribute methamphetamine and opening and maintaining a place for the distribution of a controlled substance are repeated in the recitation of Morales's criminal history in the PSR. Nevertheless, the recommendation to classify Morales as a career offender was not erroneous. Morales's following federal convictions constitute more than two controlled substance offenses for the purposes of calculating the career offender Guidelines enhancement: conspiracy to possess marijuana in 1994; conspiracy to possess with intent to distribute cocaine, and possession with intent to distribute cocaine in 2000; and conspiracy to possess with intent to distribute marijuana in 2001.

The chief issue at sentencing was Morales's two convictions for unlawful re-entry into the Unites States as a non-citizen in 2000 and 2018. Morales argued through trial counsel Attorney Robert Golger that he ought to have been deemed a naturalized citizen upon the approval of his mother's citizenship application and that I should not consider his unlawful re-entry convictions when fashioning an appropriate sentence. *See generally* Def.'s Sent. Mem., Doc. No. 1138. The government, characterizing Morales's citizenship argument as "speculative" and not properly before this Court, principally argued that I should leave resolution of Morales's citizenship status to the administrative agencies adjudicating the issue. Gov.'s Sent. Mem., Doc. No. 1156, at 2.

Morales appeared before me for sentencing on December 28, 2020. Min. Entry, Doc. No. 1161. At the hearing, I solicited the parties' input regarding the factual statements set forth in the PSR and, without objection, adopted the findings of fact therein. Sent. Tr., Doc. No. 1275, at 7. Morales, through defense counsel, argued that the mandatory minimum sentence was warranted, though excessive, in light of Morales's participation in a "strict drug transaction" without any violence or victims. *Id*. at 8. Counsel also asserted that he "probably should have" made the argument that Morales's criminal history was "overstated," because the basis for the career offender enhancement "appear[ed] to be some convictions that [we]re rather dated," and Morales had been "crime-free in the interim." *Id*. at 9. In support of the mandatory minimum sentence, counsel pointed to Morales's complicated immigration issues, his age, and his family support. *Id*. at 9-11. The government again advocated for letting Morales's immigration proceedings play out administratively and, in support of a sentence "in the higher end of" the non-career-offender Guidelines range (130 to 162 months of imprisonment), emphasized Morales's five federal convictions for non-immigration offenses— specifically, three drug

4

conspiracies, rioting in a prison, possession of a machine gun— while observing that the convictions were dated due to being "punctuated by extensive terms of incarceration." *Id.* at 15-18, 21.

After considering the parties' submissions and hearing argument, I principally sentenced Morales to 156 months' incarceration. Judgment, Cr. Doc. No. 1162. Although I concluded that the career-offender provisions properly applied to Morales, I chose not to rely on the Guidelines range reflecting the career offender enhancement. *Id.* at 1. Instead, I considered what Morales's Guidelines range would have been but for the career offender provisions. Sent. Tr., Cr. Doc. No. 1275, at 21. With the career offender enhancement, Morales would have been subject to a Guidelines range of 262 to 327 months' imprisonment; without it, Morales was subject to a Guidelines range of 130 to 162 months. *Id.* at 7, 21. Concluding that the mandatory minimum sentence of ten years was insufficient to serve the purposes of sentencing in light of the large drug quantities at issue and Morales's "very troubling" history of and continued criminal conduct, I determined that a 156-month term of incarceration was appropriate. *Id*. at 25-27.

At the end of the sentencing hearing, I informed Morales of his right to appeal his sentence and advised him that, under the terms of his plea agreement, he had waived this right under certain circumstances, which appeared to me to have been met in light of his appellate waiver and 156-month sentence. *Id*. at 31. I nevertheless encouraged Morales to confer with his counsel regarding his right to appeal and the Court's assessment of the appellate waiver. *Id*.

Morales did not appeal his sentence.

B. The Section 2255 Petition

On February 28, 2022, Morales filed the instant petition ("the Petition"). Doc. No. 1. Through the Petition, Morales argues that his conviction and sentence should be vacated because

5

his lawyer provided ineffective assistance by failing to object to the assigned criminal history category and the application of the career offender enhancements in this case. *Id.* at 17, 19, 25.

On March 4, 2022, I ordered the government to show cause why the relief requested by Morales should not be granted. Doc. No. 4. On April 29, 2022, the government opposed the Petition. *See generally* Opp'n, Doc. No. 6. Morales did not reply.

The Petition is now before me.

## II.     Legal Standards

A section 2255 petition provides a prisoner in federal custody an opportunity to challenge the legality of his or her sentence. To obtain relief under section 2255, a petitioner must show that his prior sentence was invalid because: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum detention authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

The standard is stringent; even constitutional errors will not be redressed through a section 2255 petition unless they have had a "substantial and injurious effect" that results in "actual prejudice" to the petitioner. *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637 (1993) (internal citations omitted); *see also Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999) (applying *Brecht*'s harmless error standard to section 2255 petitions). The petitioner bears the burden of proving that he or she is entitled to relief by a preponderance of the evidence. *Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000).

A petitioner is barred from raising a claim on habeas review that was not properly raised on direct review unless the petitioner is able to show "cause and actual prejudice" or "actual innocence." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (cleaned up). A petitioner may,

6

however, bring a claim of ineffective assistance of counsel that was not raised previously at trial or on appeal.  *See Massaro v. United States*, 538 U.S. 500, 504 (2003).

Under section 2255, a petitioner is entitled to a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  "Mere generalities or hearsay statements will not normally entitle the applicant to a hearing. . . .  The petitioner must set forth specific facts which he is in a position to establish by competent evidence."  *Dalli v. United States*, 491 F.2d 758, 760–61 (2d Cir. 1974) (citations omitted).  In the absence of supporting facts, the court may resolve a petitioner's claims without a hearing.  *See id.* at 760–62.

### III.   Discussion

Morales argues that he received ineffective assistance of counsel in light of Attorney Golger's alleged failure to adequately prepare or present "factual information toward Morales-Arambula's criminal history category" and failure to "argue the misinterpretation of the career offender enhancement applied in petitioner Morales-Arambula's presentence report filed before the district court."  Pet., Doc. No. 1, at 17, 19, 25.

The government argues that the Petition is procedurally defective because: (1) Morales waived his right to appeal or collaterally attack his conviction through his plea agreement, (2) his claim his time-barred under 28 U.S.C. § 2255(f)(1), (3) Morales has procedurally defaulted on his claim by failing to directly raise it on appeal, and (4) the claim lacks merit.  *See generally* Opp'n, Doc. No. 6.

For the following reasons, I agree with the government.

A. <u>The Appeal Waiver</u>

Through his plea agreement, Morales "knowingly, intelligently, and voluntarily" agreed to waive his right to "appeal or collaterally attack the sentence" if it did not exceed 262 months of imprisonment. Plea, Cr. Doc. No. 906, at 5-6. Morales's sentence of 156 months' imprisonment fell below that threshold. As an initial matter, then, I must assess whether Morales waived his right to appeal his sentence, and whether that waiver has been rendered unenforceable as a result of ineffective assistance of counsel.

"It is by now well-settled that a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon Guidelines range is enforceable." *United States v. Djelevic*, 161 F.3d 104, 106 (2d Cir. 1998). A defendant who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence may not appeal the merits of a sentence conforming to the agreement. *Id*. at 107. A court may decline to address an ineffective assistance claim that "in reality is challenging the correctness of [a defendant's] sentence" where the defendant has entered into a valid plea agreement and waived his right to challenge his sentence on appeal. *Id*. (explaining that "[i]f we were to allow a claim of ineffective assistance of counsel at sentencing as a means of circumventing plain language in a waiver agreement, the waiver of appeal provision would be rendered meaningless").

Morales claims that Attorney Golger rendered ineffective assistance at sentencing by failing to object to the PSR's recommended calculation of the Guidelines, based on its calculation of his criminal history and application of the career offender enhancement, that the Court adopted. But this claim is foreclosed by the Second Circuit's decision in *Djelevic*, because Morales appears to substantively challenge the correctness of his sentence under the guise of a claim that his counsel was ineffective for failing to object at sentencing to its imposition. *See id.* ("[D]espite [the defendant's] effort to dress up his claim as a violation of the Sixth Amendment,

8

[he] in reality is challenging the correctness of his sentence under the Sentencing Guidelines, and is therefore barred by the plain language of the waiver contained in his plea agreement with the government."). Consider that Morales does not contend that he received ineffective assistance of counsel when entering into the plea agreement containing the same criminal history calculation and career offender enhancement, an argument that might have provoked doubt about the validity of the appeal waiver. *See Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008). He merely challenges the failure of counsel to object at sentencing and, therefore, challenges the correctness of the sentence imposed. *See*, *e.g.*, Pet., Doc. No. 1, at 21 ("The records will conclusively establish[] before the court that counsel Golger failed to make the necessary assessment of his sentencing memorandum filed in Morales-Arambula's case before the court.") (emphasis original).

Morales, moreover, establishes no reason to set aside the appeal waiver. An appellate waiver is "unenforceable only in very limited situations," including (1) "when the waiver was not made knowingly, voluntarily, and competently;" (2) "when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases;" (3) "when the government breached the plea agreement;" or (4) "when the sentencing court failed to enunciate any rationale for the defendant's sentence." *United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010) (internal quotation marks omitted). Considering each of the circumstances upon review of the Petition and the record, none of Morales's arguments falls within the circumscribed exceptions to the validity of an appeal waiver.

For example, Morales does not contend that he did not waive his right to appeal knowingly, voluntarily, and competently. Nor would the record not support a finding that Morales invalidly waived his right to appeal. I reviewed the waiver at Morales's plea hearing,

where I was "entitled to accept [his] statements under oath at a plea allocution as true." *United States v. Maher*, 108 F.3d 1513, 1521 (2d Cir. 1997) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)); *see also United States v. Rivernider*, 828 F.3d 91, 105 (2d Cir. 2016) (observing that "sworn testimony given during a plea colloquy 'carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made'") (quoting *United States v. Juncal*, 245 F.3d 166, 170–71 (2d Cir. 2001)). At the plea colloquy, I discussed the terms of the appeal waiver with Morales and advised him that, if he signed the plea agreement, then he would waive his right to appeal or file a habeas corpus petition if he received a sentence within the agreed-upon range. Plea Tr., Doc. No. 1318, at 12-13, 34-35. In response to my questions, Morales indicated that he understood the terms of the waiver and its implications in his case, and he further stated that his agreement to enter into the waiver was voluntary. *Id*. at 34-35. The record indicates that Morales subsequently signed the plea agreement.[5] *Id*. at 35-36. Thus, taking Morales's statements at the plea hearing to be true, the record clearly demonstrates that his entry into the waiver was knowing and voluntary, and that the waiver is thus an enforceable bar to this petition.

Accordingly, Morales cannot collaterally attack his conviction or sentence by filing a section 2255 motion.

B. The One-Year Statute of Limitations

Even if were to construe the Petition to state an ineffective assistance claim rather than a challenge to Morales's sentence, the Petition would still be procedurally defective.

---

[5] I discussed the terms of the appeal waiver with Morales again at sentencing and advised him that he was waiving his right to appeal or file a habeas corpus petition if he received a sentence within the agreed-upon range, and that I believed such conditions had been met in his case. Sent. Tr., Doc. No. 1275, at 30-31.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), motions filed pursuant to 28 U.S.C. § 2255 are subject to a one-year statute of limitations. *See* 28 U.S.C. § 2255(f). Specifically, the one-year limitation period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id*. For petitioners who do not appeal their convictions, the district court's judgment of conviction "becomes final when the time for filing a direct appeal expires." *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005). The time for filing a direct appeal of a criminal conviction expires fourteen days after "the entry of . . . the judgment or the order being appealed." Fed. R. App. P. 4(b)(1)(A)(i). Morales's judgment of conviction entered on December 28, 2020; Morales did not file a direct appeal; and his conviction became final fourteen days later, on January 11, 2021. Judgment, Cr. Doc. No. 1162. Thus, Morales had a year from that date, January 11, 2022, to file a timely section 2255 motion. Because Morales did not file the Petition until more than a month later, on February 28, 2022, the motion is untimely under subsection 2255(f)(1). Pet., Doc. No. 1.

Section 2255's one-year limitations period may be tolled in certain circumstances, but Morales does not set forth a sufficient showing of such circumstances. Specifically, the limitations period may be tolled upon a showing that the petitioner "has been pursuing his rights diligently" and "that some extraordinary circumstance stood in his way and prevented timely

11

filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (cleaned up). "To show that extraordinary circumstances prevented him from filing his petition on time, [a] petitioner must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001)

Morales does not demonstrate sufficient diligence. The Petition challenges the determination of Morales's criminal history and Attorney Golger's failure to object to "misinterpretation of prior conviction[s] used to enhance Morales-Arambula's criminal history category base[d] upon uncontested prior convictions that date back over [15], years." Pet., Doc. No. 1, at 25. But both of those alleged errors were discoverable by a diligent person at the time of Morales's sentencing— they were in the PSR, which Morales had an opportunity to review and contest, and discussed at sentencing— and therefore offer no basis for a delay nor any excuse for a failure to raise the issues in a timely fashion.

Nor does Morales set forth a sufficiently extraordinary circumstance to toll the statute of limitations. Morales appears to seek equitable tolling, requesting "extended time" in light of the six weeks in which he was "held under lock-down without access to law library, legal computers, and legal books," which would have afforded him "adequate time to continue a thorough review of the records" and "substantiate a complete argument" for habeas relief. *Id.* at 13. Like the government, I construe this language to suggest that Morales was "prevented from making a motion" by governmental action in violation of the Constitution or laws of the United States, pursuant to 28 U.S.C. § 2255(f)(2). And I agree with the government that Morales fails to

demonstrate that an unlawful government impediment prevented him from filing a timely section 2255 motion.

As various courts have held, a habeas petitioner "cannot meet his burden of establishing that a court should apply the doctrine of equitable tolling simply by making a passing reference to the pandemic or the resulting lockdown." *Hines v. United States*, 2021 WL 2456679, at *2 (S.D.N.Y. June 16, 2021); *accord Rodriguez v. United States*, 2022 WL 1229017, at *3 (D. Conn. Apr. 26, 2022). In *Hines*, the Southern District of New York rejected the argument that Morales makes here— that pandemic-related restrictions on access to the law library and prison legal assistance programs hindered his ability to timely file his motion— because "[t]he pandemic is plainly not government-created, and I do not regard steps taken in the interest of health and safety as government-induced impediments." *Hines*, 2021 WL 2456679, at *2. I agree with that reasoning, as applied to this circumstances set forth in the Petition.

Accordingly, Morales's claim is time-barred.

C. The Merits

Even if Morales's claim were not waived or time-barred, I would still conclude that the Petition fails on the merits.

A petitioner asserting ineffective assistance of counsel must establish that (1) counsel's performance was objectively deficient, and (2) that the petitioner was actually prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. With respect to the performance prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. "In assessing the attorney's performance, a

13

reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct.'" *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690). With respect to the prejudice prong, the petitioner must establish that that there is "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 694).

1. *The Criminal History Calculation Claim*

Evidence in the record concerning Morales's criminal history points claim reflects Attorney Golger's diligent efforts on Morales's behalf. *See generally* Def.'s Sent. Mem., Doc. No. 1138. In fact, Attorney Golger's argument concerning Morales's criminal history was a key factor in my decision to discount Morales's convictions for unlawful re-entry, to decline to impose the career offender enhancement, and to impose a non-Guidelines sentence far below the bottom of Morales's Guidelines range; and to ensure that Morales's sentence in this case would run concurrently with the sentence imposed for his 2018 conviction for unlawful re-entry. *See* Sentencing Tr., Doc. No. 1275, at 22-23.

Accordingly, the Petition fails to establish that Attorney Golger's performance satisfies the performance prong of the *Strickland* analysis.

2. *The Career Offender Enhancement Claim*

Assuming *arguendo* that Morales were to establish that Attorney Golger's performance with respect to the allegedly wrongful career offender enhancement was deficient (which I do not conclude on these facts), Morales nevertheless could not state a claim of ineffective assistance for a simple reason: Although I formally calculated Morales's Guidelines imprisonment range applying the career offender provisions and noted that the career offender provisions had

14

increased his Guidelines imprisonment range, I nonetheless decided to impose a sentence within the Guidelines range that would have applied *without* the career offender enhancements. Therefore, there is not a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Weingarten v. United States*, 865 F.3d 48, 52 (2d Cir. 2017). Because I did not rely on the allegedly erroneous classification of Morales as a career offender when sentencing him, the Petition cannot satisfy the prejudice prong of the *Strickland* analysis.

Indeed, the record demonstrates that I fully considered that Morales's recommended sentence was higher than it would have been because of the career offender provisions. Sent. Tr., Cr. Doc. No. 1275, at 25. During the sentencing hearing, I considered what Morales's Guidelines range would have been but for the career offender provisions and concluded that "the original Guidelines range," referring to the Guidelines range without the career offender enhancement, "[wa]s sufficient." *Id.* at 26; *see also* Judgment, Cr. Doc. No. 1162, at 1 ("Morales's Guidelines imprisonment range was increased by the career offender provisions; the sentence imposed falls within the Guidelines range that would have applied without the career offender enhancements."). The record demonstrates that, disregarding the career offender enhancement, I sentenced Morales to the shortest period of incarceration I considered sufficient to serve the purposes of sentencing and that any error in classifying Morales as a career offender did not affect his sentence.

I considered a similar situation in *Hansbery v. United States,* wherein I concluded that a similarly-situated defendant was not prejudiced by any ineffective representation for analogous reasons. 2018 WL 3862690, at *7 (D. Conn. Aug. 14, 2018). There, the petitioner likewise argued that he should not have been classified as a career offender. I concluded that even if the

petitioner were correct that he should not have been classified as a career offender, his claim was meritless because "I did not sentence him as one." *Hansberry*, 2018 WL 3862690 at *7. There, as here, there was not a "reasonable probability that, but for counsel's error, the defendant would have received a different sentence," *Pak v. United States*, 278 F. Supp. 2d 263 (D. Conn. 2003) (citing *Johnson v. United States*, 313 F.3d 815, 818 (2d Cir. 2002)), and the petitioner was not prejudiced by any error on the part of his attorney. Because "any error in the [Guidelines] calculations was harmless," *United States v. Mandell*, 752 F.3d 544, 553 (2d Cir. 2014) (per curiam), Morales, like the *Hansberry* petitioner, is not entitled to resentencing on the basis of ineffective assistance of counsel. *See Hansberry*, 2018 WL 3862690, at *7.

Accordingly, the Petition fails to satisfy the prejudice prong of the *Strickland* analysis.

## IV.   Conclusion

For the foregoing reasons Morales's motion to vacate, set aside, or correct his sentence under section 2255 is **denied**. Doc. No. 1.

Morales has not shown that he was denied a constitutionally or federally protected right. Thus, any appeal from this order would not be taken in good faith and a certificate of appealability will not issue.

The Clerk is hereby directed to close this case.

So ordered.

Dated at Bridgeport, Connecticut, this 14th day of March 2022.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge